**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hongxu Jin,<br><br>Petitioner,<br><br>v.<br><br>RAUL MALDONADO, *in his official capacity as Warden of the Metropolitan Detention Center, Brooklyn*; KENNETH GENALO, *in his official capacity as Field Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations;* MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States;* EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>Respondents. | Case No. 1:26-4055<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Hongxu Jin, is in the physical custody of Respondents at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232. He now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner is subject to mandatory detention.

2. Petitioner is charged with, inter alia, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3. Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement ("ICE") employees to consider anyone inadmissible under § 1182(a)(6)(A)(i).

4. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a). That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

5. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

6. ICE's detention of Petitioner is arbitrary, unsupported by statute, unconstitutional, and effectuated without any procedural safeguards. This Court should immediately order his release with adequate procedural protections. ICE's conduct fails to comply basic procedural protections required under the Constitution. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

7. Accordingly, Petitioner seeks a writ of habeas corpus ordering immediate release from custody.

## JURISDICTION

8. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232.

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All-Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Eastern District of New York, the judicial district in which Petitioner currently is detained.

12. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## REQUIREMENTS OF 28 U.S.C. § 2243

13. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an

order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

14. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

15. On information and belief, Petitioner Hongxu Jin is a citizen of China who has been detained by ICE since June 22, 2026, after he was arrested directly by ICE following his asylum interview in Bethpage, New York.

16. Respondent Raul Maldonado is the Warden of the Metropolitan Detention Center, Brooklyn, where Petitioner is currently detained. As Warden, Respondent has day-to-day custody over Petitioner and is sued in his official capacity.

17. Respondent Kenneth Genalo is the Field Office Director for the New York City area. In that capacity, Director Genalo oversees all Enforcement and Removal Operations (ERO) activities within the New York City area, which includes the five boroughs of New York City and the surrounding counties under the jurisdiction of the New York Field Office. Director Genalo is sued in his official capacity.

18. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and

Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

19. Respondent Todd Blanche is the Acting Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

20. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations.

## LEGAL FRAMEWORK

21. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

22. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ, while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c) *See also* 8 U.S.C. § 1229a.

23. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

24. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

25. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

26. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

27. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

28. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

29. As recently as January 2025, the Laken Riley Act was enacted. This law amended the mandatory detention provision of INA § 236(c) to apply to aliens who are inadmissible under INA § 212(a)(6)(A), and were arrested for, convicted of, or committed a class of crimes related to theft or injury.[2] If the intent was for aliens charged under INA § 212(a)(6)(A) to be detained under INA § 235, then amending the provisions of INA § 236(c) in this manner would have been unnecessary. Likewise, "[w]hen Congress creates "specific exceptions" to a statute's

applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez vs Bostock*, 2025 WL1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). A contrary interpretation would override the purpose of the statute. *See Yao v. Almodovar*, No. 25-cv-9982 (PAE), at 18 (S.D.N.Y. Dec. 17, 2025) (finding that such interpretation of the Laken Riley Act "is at odds with modern-day principle of statutory construction. A foundational tenet of such is that the purpose of a statute as derived from the statements of legislators *cannot* override its plain text.") (emphasis included) citing *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 111 (1991) (Scalia, J.); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (Thomas, J.); John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 6–7 (2001)

30. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

31. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

32. On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the

[1] *U.S. Immigration and Customs Enforcement, Interim Guidance Regarding Detention Authority for Applications for Admission.* (July 8, 2025), AILA Doc. No. 25071607. *https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission*

United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

33. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

34. Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez, supra*.

35. Subsequently, numerous federal courts adopted the same interpretation of the INA's detention provisions and rejected ICE and EOIR's contrary construction. *See Malacidze v. Noem*, No. CIV-25-1527-D, 2026 LX 95511 (W.D. Okla. Jan. 28, 2026); *Santos v. Grant*, No. CIV-25-1433-SLP, 2025 LX 661048 (W.D. Okla. Dec. 22, 2025); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 LX 598796 (W.D. Okla. Nov. 20, 2025); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 LX 517030 (W.D. Okla. Dec. 22, 2025); *Garcia v. Holt*, No. CIV-25-1225-J, 2025 LX 508489 (W.D. Okla. Dec. 8, 2025). *See also, Mendoza Gutierrez v. Baltasa*r, No. 1:25-cv-02720-RMR (D. Colo. Oct. 17, 2025); Garcia Cortes v. Noem, No. 1:25-cv-02677-CNS, 2025 U.S. Dist. LEXIS (D.N.M. Sept. 17, 2025); *Velasquez Salazar v. Dedos*, 1:25-cv-00835-DHU- JMR, 2025 U.S. Dist. LEXIS 183335 (D.N.M. Sept. 17, 2025). *See Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v.*

*Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at 2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at 3 (D. Neb. Aug. 19, 2025); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at 2 (D. Neb. Aug. 14, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025).

36. Moreover, most district courts have rejected the expansive interpretation that noncitizens who entered without inspection are automatically subject to mandatory detention without bond under 8 U.S.C. § 1225(b)(2), regardless of the duration of their presence in the United States. See, e.g., *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same).

37. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

38. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[ed] the inadmissibility or deportability of [all] [noncitizen]."

39. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez* at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at 7.

40. § 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

41. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether [all] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

42. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

43. Although a person present without admission may be classified as an "applicant for admission," that status does not make them a person "seeking admission" under § 1225(b). Treating those terms as synonymous collapses two separate concepts Congress deliberately distinguished. Because Petitioner resides in the United States and is in standard § 1229a proceedings, his detention is authorized, if at all, under § 1226(a). Applying § 1225(b)(2)(A) to individuals in Petitioner's circumstances would disregard the statutory structure and render superfluous. *See Yao v. Almodovar*, No. 25-cv-9982 (PAE), at 11-13 (S.D.N.Y. Dec. 17, 2025) (holding that "as a matter of statutory construction [...] § 1225 applies to arriving noncitizens, and § 1226 governs the process of arresting and detaining noncitizens who have entered the United States and remained here pending their removal.") citing *J.G.O.*, 2025 WL 3040142, at *4; *Esperanza*, 2025 WL 3513983, at *5–6; *Tumba Huamani*,2025 WL 3079014, at *3–4; *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025). A noncitizen "cannot be subject to both §§ 1225 and 1226." *Lopez Benitez*, 795 F. Supp. 3d at

485; *see also Villegas*, 2025 WL 3215597, at *2; *Campbell v. Almodovar*, No. 25 Civ. 9509, 2025 WL 3538351, at *1 (S.D.N.Y. Dec. 10, 2025); *Gonzalez*, 2025 WL 2961626, at *4.

44. On February 18, 2026, the Central District of California issued an order in *Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr. et al.*, Case No. 5:25-cv-01873-SSS-BFM, addressing nationwide compliance issues arising from the government's continued reliance on *Matter of Yajure Hurtado*. In that order, the court rejected the executive branch's continued reliance on *Hurtado* and held that executive agencies cannot privilege an administrative interpretation over a federal court's declaration of law. *Id* at 15-16. The court subsequently stayed its order as of the date of this Petition, pending further proceedings. Although the order arises within the Ninth Circuit, its reasoning constitutes persuasive authority for courts addressing the same statutory question.

45. Recent persuasive authority confirms that Petitioner's detention is governed by § 1226, not § 1225. On April 28, 2026, the Second Circuit issued *Cunha v. Freden*, a precedential decision rejecting the Government's position that § 1225(b)(2)(A) mandates detention of noncitizens who are already present in the United States after entering without inspection and who were not apprehended while entering the country or shortly thereafter. *Cunha v. Freden*, No. 25-3141-pr. (2d Cir. Apr. 28, 2026). *Cunha* is binding on this Court, its reasoning is highly persuasive and consistent with district court decisions in this Circuit holding that § 1226 governs detention under these circumstances. Thus, Petitioner's detention under § 1225 is unlawful, and habeas relief is warranted.

46. Accordingly, Respondents' continued reliance on §1225(b)(2) constitutes an unlawful expansion of detention authority inconsistent with governing circuit precedent.

## FACTS

47. Petitioner has resided in the United States since May 25, 2019, and currently lives at 144-42 37th Ave, Flushing, New York 11354.

48. On information and belief, on June 22, 2026, Petitioner was arrested directly by ICE following his asylum interview in Bethpage, Long Island, New York. Petitioner is presently detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232.

49. DHS placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

50. On information and belief, Petitioner is employed at Skyline Sap New York and maintains a stable source of income and a fixed residence. Petitioner is neither a flight risk nor a danger to the community.

51. According to the ICE Detainee Locator System, Petitioner is presently detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232. A true and correct copy of the Locator search result is attached hereto as **Exhibit A**.

52. Petitioner has a pending Form I-589, Application for Asylum and for Withholding of Removal, which was filed prior to his detention and remains awaiting adjudication. A true and correct copy of the pending Form I-589 is attached hereto as **Exhibit B**.

53. As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from their family and community.

## CLAIMS FOR RELIEF

**<u>COUNT I</u>**

**Violation of the INA**

54. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

55. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

56. The government's own custody paperwork frequently cites §1226 as the basis for detention, reflecting the longstanding agency practice and regulatory understanding that individuals in Petitioner's posture fall under §1226(a). Attempts to recharacterize detention under §1225(b) only after litigation begins deserve little weight, as agencies must justify their actions on the grounds they relied on at the time the action was taken. A shifting litigation position cannot retroactively validate a detention that was never grounded in §1225(b) to begin with.

57. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

**COUNT II**
**Violation of Due Process**

58. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

59. The government may not deprive a person of life, liberty, or property without due

process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

60. Petitioner has a fundamental interest in liberty and being free from official restraint.

61. Petitioner's detention violates the Due Process Clause because ICE re-detained Petitioner at a routine traffic stop without providing any of the procedural safeguards required when the government seeks to deprive an individual of liberty. The Supreme Court's framework in *Mathews v. Eldridge*, 424 U.S. 319 (1976), governs this analysis. Under *Mathews*, courts balance three considerations: the weight of the private interest at stake, the risk of erroneous deprivation under existing procedures and the value of additional safeguards, and the government's interest in avoiding additional procedures. Each factor strongly favors Petitioner and demonstrates that the detention is unconstitutional.

62. Even if the statutory question were settled, Petitioner's detention violates the Constitution. The Due Process Clause prohibits the government from depriving a person of physical liberty without procedural safeguards. Petitioner was a subject to a routine traffic stop, arrested without notice, without an individualized assessment of risk, and without any opportunity to be heard, is fundamentally incompatible with constitutional requirements.

63. Furthermore, under the Fifth Amendment's Due Process Clause, any restriction on liberty must be reasonably related to a legitimate governmental purpose and must not be excessive in relation to that purpose. See *Zadvydas, supra*. Electronic monitoring and GPS ankle bracelets function as continuing forms of custodial supervision that significantly restrict freedom of movement. In the absence of a lawful basis and individualized findings demonstrating

necessity, such surveillance-based conditions impermissibly burden Petitioner's fundamental liberty interests.

**EXHAUSTION**

64. There is no statutory requirement that an immigration detainee exhaust administrative remedies, including a bond or an appeal thereof to the BIA, before seeking habeas relief under 28 U.S.C. § 2241. Courts in other Districts have repeatedly held that exhaustion in immigration-detention habeas cases is a judicially-created, prudential doctrine, not a jurisdictional bar. *See Nolasco Rodriguez v. Decker*, 507 F. Supp. 3d 179 (S.D.N.Y. 2020). Under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995) (quoting *Guitard v. U.S. Sec 'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992)).

65. Because Congress has imposed no statutory exhaustion requirement on habeas challenges to immigration detention, courts in this District treat exhaustion as a judicially-created prudential standard rather than a mandatory prerequisite. *Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)*; see also Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). Further, failure to exhaust administrative remedies may be excused "when such exhaustion would be futile or where the agency has predetermined the issue before it." *See Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (quoting *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009)); *see also Beharry*, 329 F.3d at 62; *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Failing to attempt to use administrative remedies is not necessarily dispositive of the exhaustion question if the ultimate outcome of such

administrative remedies would be futile. *See Velasco Lopez v. Decker*, No. 19-cv -2912 (ALC), 2019 WL 2655806, at *2 (S.D.N.Y. May 15, 2019) (excusing exhaustion on futility grounds though petitioner had not appealed to the BIA); *see also Garcia v. Decker*, No. 20-cv -1345 (LJL), 2020 WL 1435007, at *8 (S.D.N.Y. Mar. 24, 2020); *Joseph*, 2018 WL 6075067, at *5.

66. Given this binding precedent, pursuing an administrative appeal would serve no practical purpose. Exhaustion is unnecessary "where the agency's position appears already set and recourse to administrative remedies is very likely futile." *Vasquez-Rodriguez v. Garland*, 7 F.4th (9th Cir. 2021). Because immigration judges are bound by BIA decisions, *Hurtado* forecloses any finding of jurisdiction to consider custody redetermination for noncitizens in Petitioner's position. As a result, only judicial intervention can remove the barrier imposed by *Hurtado* and permit Petitioner to meaningfully pursue the administrative remedies otherwise available to her.

67. Likewise, the record demonstrates an ongoing pattern of violations by the agency. In practice, immigration bond hearings are routinely denied on boilerplate findings that no amount of bond would demonstrate that the detainee is not a "flight risk" or "danger to the community," even where the detainee has strong family, community, and legal ties to the United States and is actively pursuing relief from removal.

68. That risk is compounded in Petitioner's case. As a practical matter, a detained noncitizen cannot marshal the type of corroborative evidence that immigration courts routinely expect within a very short window. Obtaining character letters from employers, landlords, pastors, community members, or friends requires time, mail or electronic communication, translation, and, frequently, notarization. Petitioner has been given only a very short window in which to request and collect such letters, while simultaneously trying to communicate with

counsel and navigate detention-facility restrictions on phone calls, email, and visitation. Under these conditions, "preparing" for a bond hearing is largely illusory: the detainee appears in court without the documentary support that could demonstrate ties to the community and rebut generalized assertions of flight risk or dangerousness.

69. Recent Public reporting further confirms that these concerns are not speculative.

Former immigration judges have described an institutional environment in which immigration courts are pressured to produce "numbers," advance deportations, and keep noncitizens detained, with former judges further describing the need to "read the room" if they wished to remain in their positions. These reported concerns underscore the risk that immigration bond proceedings may function less as neutral custody determinations and more as mechanisms for continued detention, particularly where boilerplate findings of "flight risk" or "danger" substitute for individualized evidence.[2]

70. Requiring Petitioner to pursue further bond proceedings or to exhaust an appeal to the BIA before seeking habeas relief would inflict precisely the sort of irreparable harm that prudential exhaustion is designed to avoid. Each additional day of detention constitutes an ongoing deprivation of liberty; and as in *Nolasco Rodriguez*, the BIA's settled legal position on the relevant bond-hearing standards means that the outcome of any appeal is foreordained.

71. Prudential exhaustion should also be excused because the available administrative process is inadequate and would not provide meaningful relief. Recent patterns in immigration bond appeals demonstrate that BIA review is unlikely to correct erroneous custody

[2] *See* CBS Sunday Morning, Former Judges Speak Out on Trump Admin.'s Immigration Court Purges, CBS News (video segment) (reporting that former immigration judges described institutional pressure within the immigration court system to prioritize case-completion numbers, deportation, and detention, and raised concerns regarding the effect of such pressure on due process and neutral adjudication), available at https://www.youtube.com/watch?v=yg7_YyXc16I.

determinations where an immigration judge has already labeled a detainee a flight risk or danger to the community. For instance, in bond appeals from the Adelanto Immigration Court between May and August 2025, the Board did not reverse any immigration judge's substantive finding that a noncitizen posed a danger or flight risk; the few appeals that were sustained and remanded were based on procedural defects rather than a meaningful correction of the custody determination itself. This record supports the conclusion that requiring Petitioner to pursue administrative review would merely prolong his detention without offering a realistic opportunity for relief.[3]

72. The Board's recent precedent decisions further reinforce the futility of requiring exhaustion here. Public reporting has observed that the overwhelming majority of the Board's published decisions during the relevant period favored DHS, while separate reporting has described the Administration's instruction that immigration judges stop granting bond to noncitizens who entered without inspection, even where they lack criminal histories and have lived in the United States for years. Public reporting confirms that this is not an isolated defect in Petitioner's case, but part of a broader agency position restricting bond for noncitizens who entered without inspection. As The New York Times reported, the Administration has instructed immigration judges to stop granting bond to such noncitizens, departing from decades of prior practice and causing individuals to remain detained for extended periods even where they have no criminal history and have lived in the United States for years. That reported policy directly bears on futility here: requiring Petitioner to pursue further administrative custody review would

[3] The referenced decisions were published in the EOIR FOIA Reading Room, available at https://foia.eoir.justice.gov/app/ReadingRoom.aspx. As of the materials reviewed, responsive decisions were publicly available only through August 2025.

not give the agency a meaningful opportunity to correct its own error but would instead force Petitioner through a process constrained by the very policy challenged in this petition.[4]

73. In this context, exhaustion would not serve its intended purpose of allowing the agency to correct its own errors; it would instead require Petitioner to submit to a process whose outcome has effectively been predetermined by binding agency policy and institutional practice.

74. In the alternative should this Court conclude that a bond hearing is necessary, the government must bear the burden of proving, by clear and convincing evidence, that Petitioner poses either a flight risk or a danger to the community. Shifting that burden to the detainee—particularly after prolonged detention imposed without an individualized hearing—would violate the Due Process Clause and render any further administrative process constitutionally deficient. *See Velasco Lopez* at 28 & n.14 (citing *German Santos v. Warden*, Pike Cnty. Corr. Facility, 965 F.3d 203, 213 (3d Cir. 2020); *Casas-Castrillon v. D.H.S.*, 535 F.3d 942, 951 (9th Cir. 2008); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435–36 (S.D.N.Y. 2018); *Medley v. Decker*, 18-cv-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (discussing the "overwhelming consensus" of judges in the Southern District on this issue), appeal filed, (2d Cir. Dec. 27, 2019); *Rajesh v. Barr*, No. 6:19-cv-06415 (MAT), 2019 WL 5566236, at *6 (W.D.N.Y. Oct. 29, 2019) (joining the "vast majority" of district courts to hold that the Due Process Clause required the Government to bear the burden by clear and convincing evidence of justifying detention), appeal filed, (2d Cir. Dec. 27, 2019). *See also Brito v. Barr*, No. 19-cv-11314 (PBS), 2019 WL 6333093, at *4 (D. Mass. Nov. 27, 2019), appeal filed, (1st Cir. Feb. 10, 2020); *Hernandez-Lara*

[4] See Nicholas Nehamas, Allison McCann, Steven Rich, Jazmine Ulloa & Hamed Aleaziz, *How Trump Purged Immigration Judges to Speed Up Deportations*, N.Y. Times (Apr. 9, 2026), https://www.nytimes.com/2026/04/09/us/politics/trump-miller-immigration-judges-purge.html (reporting that the Administration instructed immigration judges to stop granting bond to noncitizens who crossed the border unlawfully, a departure from decades of prior practice).

*v. Immigr. & Customs Enf't, Acting Dir.*, 19-cv-394 (LM), 2019 WL 3340697, at *8 (D.N.H. July 25, 2019), appeal filed sub nom. *Hernandez Lara v. Lyons* (1st Cir. Oct. 11, 2019).

77. For all of these reasons, Petitioner respectfully submits that he is not required to exhaust further bond-hearing remedies before seeking habeas relief in this Court. In the alternative, to the extent any exhaustion requirement applies, this Court should excuse exhaustion on the grounds of futility, inadequacy of the bond-hearing process, and the ongoing irreparable harm caused by Petitioner's continued detention.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Order that Petitioner shall not be transferred outside New York while this habeas petition is pending;

c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d. Declare that Petitioner's detention is unlawful;

e. Order Petitioner's immediate release from custody; or, in the alternative, grant such other relief as this Court deems just, proper, and appropriate under 28 U.S.C. § 2241.

f. Order that, upon release, Respondents shall not impose any electronic monitoring, location-tracking device, GPS ankle bracelet, or any other form of surveillance-based conditions on Petitioner; and

g. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law.

Dated: July 7, 2026

LAW OFFICE OF NG & WASSERMAN PLLC

/s/ Jed S. Wasserman

By: Jed Wasserman
LAW OFFICE OF NG&WASSERMAN PLLC
27 East Broadway, 2nd Floor
New York, NY 10002
Telephone: (212) 925-5616
jedwasserman@ngwasserman.com

# EXHIBIT A

Official Website of the Department of Homeland Security

Report Crimes: Email or Call 1-866-DHS-2-ICE

Home | Who We Are | **What We Do** | Newsroom | Information Library | Contact ICE

< BACK TO RESULTS

# Facility Page

## Detention Information For:

**HONGXU JIN**
**Country of Birth:** China, Peoples Republic of
**A-Number:** 213112611

## Current Detention Facility:

BROOKLYN MDC
80 29th Street
Brooklyn, NY 11232
**Visitor Information:** (718) 840-4200

# ERO Office Information

Family members and legal representatives may be able to obtain additional information about

this individual's case by contacting this ERO office:

VARRICK, NY, SERVICE PROCESSING CENTER
(DOCKET CONTROL OFFICE)
**Phone Number:** (212) 863-3401

BACK TO SEARCH >

# Related Information

## Helpful Info

Status of a Case

About the Detainee Locator

Brochure

ICE ERO Field Offices

ICE Detention Facilities

Privacy Notice

## External Links

# EXHIBIT B

US DEPARTMENT OF HOMELAND SECURITY
BUREAU OF CITIZENSHIP & IMMIGRATION SERVICE
ASYLUM OFFICE
1065 STEWART AVENUE, SUITE 200
BETHPAGE, NY 11714

COPY

In the Matter of: )

**Jin, Hongxu** **A 213-112-611** )

SUPPLEMENTARY DOCUMENTATIONS

IN SUPPORT OF FORM I-589

LAW OFFICES OF MIKE P. GAO, P.C.

36-44 MAIN STREET, 3rd FL
FLUSHING, NY, 11354
WWW.LAWFIRMGAO.COM
TEL: (718)321-1822
EMAIL:CONTACT@LAWFIRMGAO.COM

June 22, 2026

# Application for Asylum and for Withholding of Removal

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0067
Expires 09/30/2027

**START HERE - Type or print in black ink. See the instructions for information about eligibility and how to complete and file this application.**

NOTE: [X] Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

## Part A.I. Information About You

| | | |
|---|---|---|
| 1. Alien Registration Number(s) (A-Number) *(if any)*<br>213112611 | 2. U.S. Social Security Number *(if any)*<br>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 | 3. USCIS Online Account Number *(if any)* |
| 4. Complete Last Name<br>Jin | 5. First Name<br>Hongxu | 6. Middle Name<br>None |

7. What other names have you used *(include maiden name and aliases)?*
None

8. Residence in the U.S. *(where you physically reside)*

| | | | |
|---|---|---|---|
| Street Number and Name<br>144 42 37th Ave | | Apt. Number<br>1G | |
| City<br>Flushing | State<br>NY | Zip Code<br>11354 | Telephone Number<br>( 929 ) 8162724 |

(NOTE: *You must be residing in the United States to submit this form.*)

9. Mailing Address in the U.S. *(if different than the address in Item Number 8)*

| | | |
|---|---|---|
| In Care Of *(if applicable)*:<br>Law Offices of Mike P Gao P C | | Telephone Number<br>( 718 ) 3211822 |
| Street Number and Name<br>3644 Main St | | Apt. Number<br>3 FL |
| City<br>Flushing | State<br>NY | Zip Code<br>11354 |

10. Sex [X] Male [ ] Female

11. Marital Status: [ ] Single [X] Married [ ] Divorced [ ] Widowed

| | | | |
|---|---|---|---|
| 12. Date of Birth *(mm/dd/yyyy)*<br>05/15/1969 | 13. City and Country of Birth<br>Jiamusi City, P R China | | |
| 14. Present Nationality *(Citizenship)*<br>P R China | 15. Nationality at Birth<br>P R China | 16. Race, Ethnic, or Tribal Group<br>Korean | 17. Religion<br>None |

18. *Check the box, a through c, that applies:* a. [X] I have never been in Immigration Court proceedings.
b. [ ] I am now in Immigration Court proceedings. c. [ ] I am not now in Immigration Court proceedings, but I have been in the past.

19. *Complete 19 a through c.*
a. When did you last leave your country? *(mm/dd/yyyy)* 03/20/2019 b. What is your current I-94 Number, if any? ________

c. List each entry into the U.S. beginning with your most recent entry. *List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.)*

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 05/25/2019 | Seattle | EWI | None |
| 10/20/2016 | New York | B2 | |
| 11/12/2015 | Los Angeles | B2 | |

| | | |
|---|---|---|
| 20. What country issued your last passport or travel document?<br>P R China | 21. Passport Number E48746076<br>Travel Document Number None | 22. Expiration Date *(mm/dd/yyyy)*<br>04/12/2025 |
| 23. What is your native language *(include dialect, if applicable)?*<br>Mandarin | 24. Are you fluent in English? [ ] Yes [X] No | 25. What other languages do you speak fluently?<br>Korean Mandarin Japanese |

## Part A.II. Information About Your Spouse and Children

| For EOIR use only. | For USCIS use only. | Action: Interview Date: ______ Asylum Officer ID No.: ______ | Decision: Approval Date: ______ Denial Date: ______ Referral Date: ______ |
|---|---|---|---|

**Your spouse** ☐ I am not married. (Skip to **Your Children** below.)

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Date of Birth *(mm/dd/yyyy)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 098432399 | EG2492449 | 07/24/1969 | |
| **5.** Complete Last Name: Wu | **6.** First Name: Haisheng | **7.** Middle Name: | **8.** Other names used *(include maiden name and aliases)*: None |

| 9. Date of Marriage *(mm/dd/yyyy)* | 10. Place of Marriage | 11. City and Country of Birth |
|---|---|---|
| 06/08/2026 | Queens | Tumen P R China |

| 12. Nationality *(Citizenship)* | 13. Race, Ethnic, or Tribal Group | 14. Sex |
|---|---|---|
| P R China | Korean | ☐ Male ☒ Female |

15. Is this person in the U.S.?
☒ Yes *(Complete Blocks 16 to 24.)* ☐ No *(Specify location):* New York NY

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. *(mm/dd/yyyy)* | 18. I-94 Number *(if any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| San Diego | 2004 | | EWI |

| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |
|---|---|---|---|
| Out of Status | | ☐ Yes ☒ No | |

24. If in the U.S., is your spouse to be included in this application? *(Check the appropriate box.)*
☒ Yes
☐ No

**Your Children.** List **all** of your children, regardless of age, location, or marital status.

☐ I do not have any children. *(Skip to Part A.III., Information about your background.)*

☒ I have children. Total number of children: 2

(**NOTE:** *Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)*

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| None | None | Single | None |
| **5.** Complete Last Name: Jin | **6.** First Name: Zhimin | **7.** Middle Name: | **8.** Date of Birth *(mm/dd/yyyy)*: 04/26/2012 |
| **9.** City and Country of Birth: Beijing P R China | **10.** Nationality *(Citizenship)*: China | **11.** Race, Ethnic, or Tribal Group: Korean | **12.** Sex: ☐ Male ☒ Female |

13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☒ No *(Specify location):* Qingdao China

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | ☐ Yes ☐ No |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☐ Yes
☐ No

## Part A.II. Information About Your Spouse and Children (continued)

| | | | |
|---|---|---|---|
| 1. Alien Registration Number (A-Number) *(if any)* None | 2. Passport/ID Card Number *(if any)* None | 3. Marital Status *(Married, Single, Divorced, Widowed)* Single | 4. U.S. Social Security Number *(if any)* None |
| 5. Complete Last Name Jin | 6. First Name Shimin | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* 01/01/2000 |
| 9. City and Country of Birth Tokyo Japan | 10. Nationality *(Citizenship)* Japan | 11. Race, Ethnic, or Tribal Group Korean | 12. Sex ☒ Male ☐ Female |
| 13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☒ No *(Specify location)*: Tokyo Japan | | | |
| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |
| 21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)* ☐ Yes ☐ No | | | |

| | | | |
|---|---|---|---|
| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Sex ☐ Male ☐ Female |
| 13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location)*: | | | |
| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |
| 21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)* ☐ Yes ☐ No | | | |

| | | | |
|---|---|---|---|
| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Sex ☐ Male ☐ Female |
| 13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location)*: | | | |
| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |
| 21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)* ☐ Yes ☐ No | | | |

## Part A.III. Information About Your Background

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street *(Provide if available)* | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| 5/2/702 New Luoyuan | Qingdao | Shandong | P R China | 08/2016 | 03/2019 |
| 502 18 E Middle Rd | Chaoyang | Beijing | P R China | 06/2003 | 08/2018 |

2. Provide the following information about your residences during the past 5 years. List your present address first.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| 144 42 37th ave | Flushing | NY | USA | 10/2019 | Present |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

3. Provide the following information about your education, beginning with the most recent school that you attended.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name of School | Type of School | Location *(Address)* | Attended From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|
| Harbin Normal University | University | Harbin China | 09/88 | 07/92 |
| Heilongjiang Boli Highschool | High School | Boli County China | 09/85 | 07/88 |
| | | | | |
| | | | | |

4. Provide the following information about your employment during the past 5 years. List your present employment first.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name and Address of Employer | Your Occupation | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|
| Skyline Spa New York | Helper | 01/2020 | Present |
| | | | |
| | | | |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| *Mother* Songxue Yu | Boli County, P R China | ☒ Deceased |
| *Father* Shoufu Jin | North Korea | ☒ Deceased |
| *Sibling* Hongyi Jin Brother | Jiamusi, P.R.China | ☐ Deceased Japan |
| *Sibling* Yili Jin Sister | Jiamusi, P.R.China | ☐ Deceased Japan |
| *Sibling* | | ☐ Deceased |
| *Sibling* | | ☐ Deceased |

## Part B. Information About Your Application

*(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)*

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the INA or withholding of removal under the Convention Against Torture), you must provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1. Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below.

I am seeking asylum or withholding of removal based on:

- [ ] Race
- [ ] Religion
- [ ] Nationality
- [X] Political opinion
- [ ] Membership in a particular social group
- [X] Torture Convention

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

- [ ] No
- [X] Yes

If "Yes," explain in detail:
1. What happened;
2. When the harm or mistreatment or threats occurred;
3. Who caused the harm or mistreatment or threats; and
4. Why you believe the harm or mistreatment or threats occurred.

Beginning in 2005, officers from China's Ministry of State Security recruited and pressured me to carry out activities on their behalf. After I refused further cooperation, they threatened me and harassed my family. In September 2017, I was seized by state security officers in Shenyang and held for more than fifty days, during which I was repeatedly interrogated, deprived of rest, and subjected to psychological pressure. In November 2017, I was released only after paying 200,000 RMB. In January 2018, I was detained again and threatened by state security officers because I sought the return of my passport.

B. Do you fear harm or mistreatment if you return to your home country?

- [ ] No
- [X] Yes

If "Yes," explain in detail:
1. What harm or mistreatment you fear;
2. Who you believe would harm or mistreat you; and
3. Why you believe you would or could be harmed or mistreated.

I fear arrest, detention, imprisonment, and further persecution if I return to China. I believe China's state security authorities continue to view me as a person of interest because of my past cooperation with the U.S. government and my refusal to cooperate with them. They have continued to harass my former wife and inquire about my whereabouts. I believe I would be targeted and persecuted again if I return to China.

## Part B. Information About Your Application (continued)

**2.** Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States (including for an immigration law violation)?

☐ No ☒ Yes

If "Yes," explain the circumstances and reasons for the action.

In September 2017, I was detained by China's state security authorities for approximately fifty-six days and repeatedly interrogated. I was released after paying 200,000 RMB. In January 2018, I was detained again for one day after requesting the return of my passport. During both detentions, I was threatened and accused of disclosing state secrets.

**3.A.** Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☒ No ☐ Yes

If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

**3.B.** Do you or your family members continue to participate in any way in these organizations or groups?

☒ No ☐ Yes

If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

**4.** Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

☐ No ☒ Yes

If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

During my previous detention, I was subjected to prolonged interrogations, deprivation of rest, and severe psychological pressure. I fear that if I return to China, state security authorities would detain and interrogate me again and subject me to similar or more severe treatment because of my past activities and cooperation with the United States government.

## Part C. Additional Information About Your Application

(**NOTE:** *Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.*)

**1.** Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U.S. Government for refugee status, asylum, or withholding of removal?

[X] No [ ] Yes

If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Indicate whether or not you were included in a parent or spouse's application. If so, include your parent or spouse's A-number in your response. If you have been denied asylum by an immigration judge or the Board of Immigration Appeals, describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

**2.A.** After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States?

[ ] No [X] Yes

**2.B.** Have you, your spouse, your child(ren), or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

[X] No [ ] Yes

If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

After leaving China in November 2018, I traveled through Dubai, Germany, France, the United Kingdom, and Canada before entering the United States near Seattle, Washington, on May 25, 2019.

**3.** Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

[X] No [ ] Yes

If "Yes," describe in detail each such incident and your own, your spouse's, or your child(ren)'s involvement.

## Part C. Additional Information About Your Application (continued)

4. After you left the country where you were harmed or fear harm, did you return to that country?

[X] No [ ] Yes

If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s).)

5. Are you filing this application more than 1 year after your last arrival in the United States?

[X] No [ ] Yes

If "Yes," explain why you did not file within the first year after you arrived. You must be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V. "Completing the Form," Part C.

6. Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States (including for an immigration law violation)?

[X] No [ ] Yes

If "Yes," for each instance, specify in your response: what occurred and the circumstances, dates, length of sentence received, location, the duration of the detention or imprisonment, reason(s) for the detention or conviction, any formal charges that were lodged against you or your relatives included in your application, and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

## Part D. Your Signature

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I certify that I am physically present in the United States or seeking admission at a Port of Entry when I execute this application. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

***WARNING:* Applicants who are in the United States unlawfully are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.**

| Print your complete name. | Write your name in your native alphabet. |
|---|---|
| Jin, Hongxu | 金弘旭 |

Did your spouse, parent, or child(ren) assist you in completing this application? [X] No [ ] Yes *(If "Yes," list the name and relationship.)*

| *(Name)* | *(Relationship)* | *(Name)* | *(Relationship)* |
|---|---|---|---|
| | | | |

Did someone other than your spouse, parent, or child(ren) prepare this application? [ ] No [X] Yes *(If "Yes," complete Part E.)*

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim? [ ] No [X] Yes

Signature of Applicant *(The person in Part. A.I.)*

➡ [ Jin Hong Xu ] 06/19/2026

Sign your name so it all appears within the brackets — Date (mm/dd/yyyy)

## Part E. Declaration of Person Preparing Form, if Other Than Applicant, Spouse, Parent, or Child

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer | Print Complete Name of Preparer |
|---|---|
| [signature] | Mike P. Gao Esq. |

| Daytime Telephone Number | Address of Preparer: Street Number and Name |
|---|---|
| ( 718 ) 3211822 | 3644 Main Street |

| Apt. Number | City | State | Zip Code |
|---|---|---|---|
| 3FL | Flushing | NY | 11354 |

| To be completed by an attorney or accredited representative (if any). | [X] Select this box if Form G-28 is attached. | Attorney State Bar Number (if applicable) | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|---|
| | | 4064549 | |

## Part F. To Be Completed at Asylum Interview, if Applicable

**NOTE:** *You will be asked to complete this part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered ____ to ____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

Signature of Applicant

Date *(mm/dd/yyyy)*

Write Your Name in Your Native Alphabet

Signature of Asylum Officer

## Part G. To Be Completed at Removal Hearing, if Applicable

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

Signature of Applicant

Date *(mm/dd/yyyy)*

Write Your Name in Your Native Alphabet

Signature of Immigration Judge